UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| GROLO LTD and GROLO LTD, | ) | Case: 1:23-cv-10960-DLC |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| ACTIVE CREATIONS LLC, | ) |  |
| and | ) |  |
| SPORTS FANATICS LLC, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## [PROPOSED] ESI DISCOVERY PROTOCOL

WHEREAS, Plaintiffs Grolo LTD and Grolo LTD ("Plaintiffs") and Defendants Active Creations LLC and Sports Fanatics LLC ("Defendants") are engaged in discovery proceedings in the above-captioned civil lawsuit (the "Lawsuit"), and their counsel have engaged in substantive discussions regarding the discovery of documents and electronically stored information ("ESI").

WHEREAS, the ESI Discovery Protocol (the "Protocol") in no way alters the Parties' rights, obligations, and/or abilities to produce documents and/or to raise objections about the production of information, consistent with the Federal Rules of Civil Procedure and common law. This Protocol is intended to supplement the Federal Rules of Civil Procedure and to promote a "just, speedy, and inexpensive determination" of this Lawsuit. Fed. R. Civ. P. 1.

NOW, THEREFORE, the following process for the Parties' production of ESI and other documents in response to discovery requests ("Discoverable Information") is so ordered in the Lawsuit:

## I. SCOPE & PRESERVATION

1.      <u>General</u>. The procedures and protocols outlined herein govern the production of Discoverable Information by all parties to the Lawsuit, whether they currently are involved or become so in the future (collectively, the "Parties"). The Parties will take reasonable steps to comply with this Protocol for the production of Discoverable Information. This Protocol does not supersede prior pretrial orders issued in this action, which shall remain in effect except to the extent inconsistent with the provisions herein.

2.      <u>ESI</u>. The term "ESI" refers to any electronically stored information in the possession, custody, or control of the Parties that are reasonably accessible or active-user files—

1

including, but not limited to: email, word processing documents, spreadsheets, electronic slide presentations, databases, and other reasonably accessible ESI in which it is reasonably anticipated that information relevant and proportional to the matter may be found.

3. Not Reasonably Accessible ESI. The circumstances of the Lawsuit do not warrant the preservation, collection, review, production, or identification on a privilege log of ESI that is not reasonably accessible, unless the Party producing ESI (a "Producing Party") believes in good faith that not reasonably accessible ESI is likely to contain significant relevant information not otherwise available in reasonably accessible sources. For purposes of this paragraph, the following sources of ESI are not reasonably accessible:

a. ESI stored in a backup system, tape, or other media for the purpose of system recovery or information recovery, including but not limited to: disaster recovery backup tapes, continuity of operations systems, and data or system mirrors or shadow copies.

b. Voicemail recordings.

c. Legacy Data or any data remaining from systems no longer in use that is unintelligible to and inaccessible by the systems currently in use.

d. Deleted, erased, or overwritten ESI, whether fragmented or whole, which were deleted in the regular course of business.

e. ESI stored in volatile and non-volatile memory, including Random Access Memory ("RAM"), Read-only Memory ("ROM"), cache memory, or in temporary or cache files, including internet history, web browser cache, and cookie files, wherever located.

f. Temporary internet files, history, cache, cookies, and the like.

g. Encrypted ESI/password-protected files, where the key or password cannot be ascertained absent extraordinary efforts.

h. ESI affected by ransomware or malware or that otherwise has been corrupted.

i. ESI stored on photocopiers, printers, scanners, and fax machines.

j. ESI stored as server, system, or network logs.

Nothing in this Protocol prevents any Party from asserting, in accordance with the Federal Rules, that other categories of ESI are not reasonably accessible within the meaning of Rule 26(b)(2)(B).

4. Native Format. The term "Native Format" or "Native File" means the format in which ESI was used and stored by the Producing Party in its ordinary course of business.

5.      Search Methodology. Each Party will conduct a reasonable inquiry of reasonably accessible sources it has reason to believe contain relevant, unique documents or ESI responsive to the opposing Party's discovery requests. Each Party may use one or more search methodologies to collect, review, and produce relevant, responsive, non- privileged documents and ESI and undertake reasonable efforts to locate discoverable information. There are many valid ways to search for and retrieve ESI, and absent a showing of specific need and good cause, the Producing Party is best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own ESI. Each Producing Party shall design and implement the methods it uses to identify, cull, and review its potentially responsive ESI based on its knowledge and understanding of its own data, the facts and issues involved in the Lawsuit, and the Requesting Party's discovery requests.

## II. FILTERING ESI

1.      Deduplication. A Producing Party will make reasonable efforts to globally deduplicate identical ESI within their own productions of Discoverable Information, as follows:

   a.      Electronic Documents that Are Not Email. Duplicate non-email ESI (such as Microsoft Word documents) may be identified based upon a commercially accepted method (e.g., MD5 or SHA-1 hash values) for binary file content. All ESI bearing an identical value are a duplicate group. The Producing Party may produce only one document image or native file for duplicate ESI documents within the duplicate group, however, the Producing Party will identify the additional custodian(s) (i.e., AllCustodian metadata field set forth in Paragraph IV.8 below) for duplicate documents not produced to the extent such information can be automatically populated by the processing of the documents.

   b.      Email. Duplicate email or other messaging files may be identified based upon a commercially accepted method (e.g., MD5 hash values) based upon the email family, which includes the parent email and all attachments. Email families bearing an identical value are considered a duplicate group. The Producing Party may produce only one document image or native file for duplicate ESI documents within the duplicate group; however, in the event that email is collected from a custodial source the Producing Party will identify each custodian(s) (i.e., AllCustodian metadata field set forth in Paragraph IV.8 below) from whom the duplicate email was collected, provided that such information can be automatically populated with industry standard ESI processing tools.

2.      Email Threading. The Parties may use industry standard analytic tools to employ "email thread suppression." As used in this Protocol, email thread suppression means producing the most inclusive email in a conversation thread, as well as all attachments within the thread, and not producing the individual messages from that thread as separate documents. Only email messages that are included within the more complete and produced thread part will be considered appropriate for exclusion from production. Metadata will not be produced for email thread parts suppressed under this paragraph and the suppressed thread parts need not be reflected on the Producing Party's privilege log.

3.      De-NISTing. ESI collections will be De-NISTed, removing commercially

3

available operating system and application file information contained on the current NIST file list.[1]

4. <u>Email Domains</u>. A Producing Party may utilize an ESI search process to identify categories of documents, such as emails from domains typically associated with junk email (e.g., fantasy-football-related emails, retailer advertising, or newsletters or alerts from non-industry sources). To the extent a Party opts to exclude uniquely identifiable email domain names typically associated with junk or irrelevant topics as part of its initial filter of potentially responsive documents, the Parties will disclose domain names excluded under this paragraph and to meet and confer on the timing for such disclosures.

5. <u>Embedded Objects</u>. Other embedded objects (as distinct from embedded files), including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set and need not be produced as separate documents by a Producing Party (e.g., such embedded objects will be produced within the document itself, rather than as separate attachments).

6. <u>Zero-byte Files</u>. The Parties shall filter out files identified as zero bytes in size.

7. <u>Date Limitation</u>. Each Party may limit the collection and review of ESI as agreed to by the Parties or as set forth by the Court.

8. <u>Custodians</u>. The Parties will meet and confer in an effort to agree upon custodians from whom ESI will be will be searched, collected, reviewed, and produced as well as the relevant data sources, including custodial, non-custodial, and third-party documents.

9. <u>Search Terms</u>. The Parties will discuss and attempt to reach agreement on the search terms to be used by each Party, recognizing that the same search terms may not necessarily be appropriate for all Parties.

### III.  PRODUCTION TIMEFRAME

1. <u>Rolling Production</u>. The Parties will produce documents, including ESI, on a rolling basis. The Parties will communicate with each other about their respective priorities for production and use good faith efforts to respond to reasonable requests for prioritized production, taking into account the volume of responsive information, its relative accessibility, efficiencies in the process of search and review, and additional processing time required for certain types of ESI.

2. <u>Supplemental Production</u>. Each Party reserves the right to supplement its productions as allowed under the rules of procedure.

### IV.  PRODUCTION FORMAT

1. <u>TIFF/Native File Format Production</u>. State Farm's default approach is to produce documents in image format, accompanied by document-level text files containing searchable text (either extracted text or text created with optical character recognition ("OCR")). Documents that

---

[1] The current NIST file list is published by the National Software Reference Library (NSRL) and can be found here: https://www.nist.gov/itl/ssd/software-quality-group/national-software-reference-library-nsrl.

4

do not contain color are produced as black-and-white Group IV single page .TIFF files (300 DPI). Documents that do contain color (e.g., charts, graphics, pictures) are produced as single page .JPEG files (300 DPI). Metadata load files are produced in .DAT file format and image load files are produced in .OPT format (i.e., industry standard "Concordance" formatted load files). The exceptions to this default approach are:

    a. Responsive, non-privileged, and unredacted spreadsheets (e.g., Microsoft Excel file), which are produced in native format by default.

    b. Responsive, non-privileged, redacted Excel-file documents will be produced as image files with redacted text.

    c. ESI maintained in presentation formats (e.g., Microsoft PowerPoint) if relevant information exists that cannot be displayed on an image (e.g., animations or embedded audio files).

    d. Other ESI that is difficult or impracticable to render in image format (.TIFF or .JPEG), such as video or audio files, may be produced in its native form with a placeholder .TIFF image stating, "Document Produced Natively."

A Producing Party retains the option to produce ESI in alternative formats, which may include native format, or a combination of native and alternate formats (including natively redacted documents) if it would be burdensome to produce a particular file in image format.

    2. <u>Database Production.</u> Discoverable Information that is stored in a database (i.e., structured data) will be produced in reasonably usable standard report formats available in the ordinary course of business. Upon review of the report(s), the Requesting Party may, on a showing of particularized need, request from the Producing Party additional information to explain any codes, abbreviations, or other information necessary to ensure the report is reasonably usable. In the event of such a request, the Producing Party will determine the most reasonable means to provide the relevant and proportional information requested.

    3. <u>Numbering/Endorsement.</u> All produced Discoverable Information will have a unique Control ID assigned ("Bates Number"), regardless of the format of the Discoverable Information, and the file produced will be named with the unique Control ID. For Discoverable Information produced in .TIFF image format, each .TIFF image will have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not obliterate or obscure any information from the source document. A Producing Party should use a consistent format for the Bates Numbers it uses across its productions.

    a. In the case of materials deemed confidential in accordance with the Confidentiality Order entered in this Lawsuit on April 21, 2022 (Dkt. 229), documents and ESI should be marked in accordance with that Confidentiality Order.

    b. The Parties will meet and confer if there are any disputes regarding the specific details of numbering and endorsement format.

4. <u>Native Files</u>. Any Discoverable Information may be produced in the image format set forth in Section IV.1. Subsequent to the production of image formats, however, the Requesting Party may, within a reasonable time and upon a showing of particularized need, request from the Producing Party that certain imaged files be produced in native format according to the following protocol:

    a. The Requesting Party shall provide a list of Bates Numbers of the imaged documents sought to be produced in native file format. The Requesting Party also shall provide the reasons for the request.

    b. The Producing Party shall either produce the native files or object to the demand for any particular file as unreasonable as follows:

        i. The Producing Party will respond in writing, setting forth its objection(s) to the production of the requested native format files.

        ii. The Parties will meet and confer regarding the request and corresponding objection(s), and if the Parties are unable to agree as to the production of the requested files in native format, the Parties shall submit the matter to the Court.

5. <u>Encrypted Files</u>. To the extent practical, the Producing Party shall take reasonable efforts to ensure that encrypted files are decrypted prior to processing, search, and production.

6. <u>Production Media</u>. The Producing Party may produce documents via a secure file transfer mechanism and/or on readily accessible, computer or electronic media including: CD-ROM, DVD, or external hard drive (with standard PC compatible interface) ("Production Media"). All Production Media will be encrypted prior to production and the Producing Party will provide a decryption key to the Requesting Party in a communication separate from the production itself.

7. <u>Metadata.</u>

    a. The Parties will produce a load file in one of two delimited formats: either standard Concordance (.DAT) or comma delimited (.CSV) that contains the available metadata fields below, to the extent a document is not redacted and the fields exist in the ordinary course of business or are automatically created in the processing of the documents:

|  |  |  |  |  |
|---|---|---|---|---|
| ProdBeg | Integer – Text | Starting Bates # | Starting Bates # | Starting Bates # |
| ProdEnd | Integer – Text | Ending Bates # | Ending Bates # | Ending Bates # |
| ProdBegAttach | Integer – Text | Starting Bates # of document | Starting Bates # of document family | Starting Bates # of document family |

6

|  |  |  |  |  |
|---|---|---|---|---|
|  |  | family |  |  |
| ProdEndAttach | Integer – Text | Ending Bates # of document family | Ending Bates # of document family | Ending Bates # of document family |
| AttachmentCount | Integer – Text |  | Where document contains attachment/s, the number of attachments included within the document | Where document contains attachment/s, the number of attachments included within the document |
| Custodian | Text | Name of person or repository the document was collected from | Name of person or repository the document was collected from | Name of person or repository the document was collected from |
| AllCustodian | Text – paragraph Separate entries with ";" |  | All names of people or repositories the document was collected from even if removed from production as a duplicate pursuant to the terms herein | All names of people or repositories the document was collected from even if removed from production as a duplicate pursuant to the terms herein |
| From | Text – paragraph |  |  | Sender of message |
| To | Text – paragraph Separate entries with ";" |  |  | Recipients of message |
| CC | Text – paragraph Separate entries with ";" |  |  | Copied recipients |
| BCC | Text – paragraph Separate entries with ";" |  |  | Blind copied recipients |
| Subject | Text – paragraph |  |  | Subject of message |

7

| | | | | |
|---|---|---|---|---|
| Date_Sent | Date (mm/dd/yyyy) | | | Date message sent |
| Time_Sent | Time (hh:mm:ss) standardized UTC format | | | Time message sent |
| Date_Rcvd | Date (mm/dd/yyyy) | | | Date message received |
| Time_Rcvd | Time (hh:mm:ss) | | | Time message received |
| Date_Created | Date/Time (mm/dd/yyyy) | | Date file was created | |
| Date_Modified | Date/Time (mm/dd/yyyy) | | Last modified date | |
| Confidentiality | Text | Any confidentiality designation asserted on the document | Any confidentiality designation asserted on the document | Any confidentiality designation asserted on the document |
| Hash | Text | | MD5 or SHA-1 Hash Value of document | MD5 or SHA-1 Hash Value of document |
| NativeLink | Text – paragraph | | Path including filename to the associated native file if produced (Relative Path) | Path including filename to the associated native file if produced (Relative Path) |
| TextLink | Text – paragraph | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) |
| MCIU File/Project Number | Integer – Text | Project Number Designation | Project Number Designation | Project Number Designation |
| FileName | Text – paragraph | | Name of file as maintained in the ordinary course of business | Name of file as maintained in the ordinary course of business |

8

| FileExtension | Text | | | A filename extension, file name extension or file extension is a suffix to the name of a computer file. The extension indicates a characteristic of the file contents or its intended use. | A filename extension, file name extension or file extension is a suffix to the name of a computer file. The extension indicates a characteristic of the file contents or its intended use. |
|---|---|---|---|---|---|
| FodlerPath | Text – paragraph | | | Original path to the file as maintained in the ordinary course of business | Path within the mail container file (*e.g.* PST file) to the message at collection time. |
| Message ID | Integer – Text | | | | Message number created by email application |
| Conversation Index | Text | | | | E-mail thread ID created by the email system. |

9

  b. No Party has an obligation to create or manually code metadata fields that are not automatically generated by the processing of the ESI or that do not exist as part of the original metadata of the electronic document except for: (1) beginning Bates Number; (2) ending Bates Number; (3) beginning attachment Bates Number; (4) ending attachment Bates Number; (5) Confidentiality; and (6) Custodian. Custodians should be identified using the convention "Last Name, First Name."

  c. The Parties may rely on metadata automatically generated by the processing of the ESI.

  d. For redacted documents, the Producing Party will provide only: (1) beginning Bates Number; (2) ending Bates Number; (3) beginning attachment Bates Number; (4) ending attachment Bates Number; and (5) page count.

**V. PRIVILEGE**

 1. <u>Privilege</u>. Each Party may review ESI for privileged information (or other information subject to a recognized immunity from discovery) prior to production. In accordance with Federal Rules of Civil Procedure 26(f)(3)(D), pursuant to Federal Rule of Evidence 502(e), no disclosure, production, or exchange of information in the Lawsuit constitutes a waiver of attorney-client privilege or of any work product protection in this or any other federal or state proceeding.

 2. <u>Redactions</u>.

  a. The Producing Party may redact any document (image or native) or metadata field that is protected from disclosure by applicable privilege or immunity or that is required by applicable law or regulation ("privileged information"). Documents (image or native) and metadata fields that include both privileged and non-privileged information will be produced with the privileged information redacted in such a way as to show the location of the redaction within the document and to display the reason therefore (e.g., "Attorney-Client Privilege" or "Work Product" or equivalent) on the face of the image. Documents or portions thereof withheld on privilege grounds will be identified in a privilege log in accordance with Federal Rules of Civil Procedure 26(b)(5). Redacted information need not be included on the privilege log.

  b. If a document that otherwise would be produced in native format requires redaction, such document may be produced in .TIFF format with an OCR text file matching the redacted version of the document in lieu of a native file. The Producing Party shall, however, make reasonable efforts to ensure that any such documents that are produced only as .TIFF images are formatted so as to be readable. The native file version of redacted documents need not be produced unless the Parties agree otherwise.

 3. <u>Privilege Logs</u>.

  a. The Parties will discuss and attempt to reach agreement on the production of privilege logs pursuant to Federal Rules of Civil Procedure 26(b)(5)(A).

## VI. GENERAL PROVISIONS

1. <u>Discoverability and Admissibility</u>. Nothing in this Protocol shall be construed to affect the admissibility of Discoverable Information. All objections to discoverability or admissibility are preserved and may be asserted at any time.

2. <u>Limitations & Non-Waiver</u>. The Parties and their attorneys do not intend by this Protocol to waive their rights to any protection or privilege, including the attorney-client privilege and work product doctrine.

3. <u>Cooperation and Proportionality</u>. The Parties will take the proportionality considerations addressed in the Federal Rules of Civil Procedure into account for purposes of preservation and production of ESI and paper documents in this Lawsuit. This Protocol is not intended to expand the Parties' obligations under Rules 1, 26, and 34.

4. <u>Meet and Confer</u>. The Parties will meet and confer regarding any disagreements that arise as a result of the implementation of this Protocol. To the extent a Producing Party reasonably expects production of specific paper documents or ESI will be impractical or unduly burdensome, the Parties will meet and confer in good faith to attempt to agree on an acceptable format for production pursuant to Rule 34(b)(2)(E).

5. <u>Variations</u>. In light of the varying and disparate data systems and architectures employed by the Parties, variations from this Protocol may be required. In the event that any Party identifies a circumstance where application of this Protocol is not technologically possible or practicable, the Producing Party will disclose to the Requesting Party the reason(s) for, and circumstances surrounding, the need to vary from this Protocol, and the Parties will meet and confer in an effort to reach agreement on an appropriate deviation from this Protocol.

6. <u>Modification</u>. This Protocol supersedes any prior discussions or agreements of the Parties on the topics contained herein, and to the extent it is contrary to any such agreements or discussions, the terms of the Protocol control. This Protocol may be modified or amended either by written agreement of the Parties submitted to the Court for approval or by order of the Court. Any practice or procedure set forth herein may be varied by agreement of the Parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the proportional, timely, and economical exchange of Discoverable Information.

So ordered.

*[signature]*

3/19/24

| | |
|---|---|
| **HOLLAND & KNIGHT LLP** | **LONDON FISCHER LLP** |
| */s/ Duvol M. Thompson* | /s/Thomas A. Leghorn |
| Duvol M. Thompson | Thomas A. Leghorn (TL6244) |
| Amir Alimehri | 59 Maiden Lane |
| 31 W 52nd Street, 12th Floor | New York, New York 10038 |
| New York, NY 10019 | (212) 972-1000 |
| Duvol.Thompson@hklaw.com | File No.: 428.0567184 |
| Amir.Alimehri@hklaw.com | E-mail: tleghorn@londonfischer.com |
| (212) 513-3200 | ***Attorneys for Defendants*** |
| ***Attorneys for Plaintiffs*** | ***Active Creations LLC and Sports Fanatics*** |
| ***Grolo LTD and Grolo LTD*** | ***LLC*** |

**SO ORDERED.**

Dated: _____

_____
Denise L. Cote
United States District Judge